Good morning. You may be seated. We'll call our first case for the morning. Lawrence Burns v. Sterling Polk, et al. And Ms. Noble, are you able to hear us all right? I am, thank you. Good morning. Judge Rovner, how are you? I'm well. How are you? Hello, Judge Pryor. Hello, Judge Kohler. Morning. Hello, everyone. Do you all mind raising her up just a volume just so I can picture up okay on my end? All right. I can scream if you like. Please don't. Please don't. We'll be fine. We'll be fine. Thank you so much. Thank you. All right. Ms. Noble. May it please the court, Ellen Noble for appellant. While detained at the Milwaukee County Jail, Lawrence Burns suffered a life-threatening medical emergency but has repeated calls for until he passed out alone in his cell. Proceeding pro se, he brought a 14th Amendment claim against defendants for their deliberate indifference to his serious medical needs. But the district court granted defendants summary judgment on the grounds that he failed to properly exhaust his administrative remedies. The court erred in two ways. First, Mr. Burns was not required to appeal his grievance under the terms of the jail's grievance policy, which requires detainees to file a grievance in the kiosk but makes an appeal of that grievance optional. And second, even if an appeal was required. Let me jump in there, Ms. Noble. If it is optional to file an appeal, how would that align with the requirements of the PLRA? In two ways. First, the term exhausted to exhaust all administrative remedies is a term of art that the Supreme Court has repeatedly said should be interpreted consistent with the doctrine of exhaustion and administrative law. And in that context, the Supreme Court has held in Darby, for example, that when a regulation says that parties may request administrative review, the appeal was optional and not required to properly exhaust administrative remedies. Ultimately, it's the jail's own written procedures and not the PLRA that defines what is and isn't required to properly exhaust those administrative remedies. Ms. Noble, I understand your point that an appeal from a denied grievance is optional under the jail's grievance procedure. But appeals are always optional. It would not make sense to tell a prisoner that he must appeal if his grievance is denied, even if he doesn't want, you know, he doesn't want to pursue it further. What I understand you to be arguing is that the jail was required to advise Mr. Burns that if he wished to preserve his right to file a federal lawsuit later, then he was required to pursue an appeal. Am I correct? Absolutely. And that's what the Cook County Jail's handbook does. That's what in the Tone case that's discussed in the briefing, the Wisconsin state grievance procedures also do. So if you want to say you may appeal, not everyone has to go ahead and appeal. There's then a separate provision or the next sentence that says, but you do have to appeal if you plan on filing a civil suit. Does every grievance procedure have to tell an inmate what he must do to exhaust his administrative remedies for purposes of a later suit? Can you point me to a case that says that because I couldn't find one. I think that is true, Your Honor, and I think that comes from the Supreme Court's decision, first in Woodford, that says exhaust means to properly exhaust, and then the next year in Jones v. Bob. I'm sorry, can you repeat that case again? It was hard. I didn't hear you. Sorry, Woodford, the Supreme Court's decision, and then Jones v. Bach in the next year says. For some reason, the mic is skipping over that first case. Sorry, Woodford. Oh, Woodford. Thank you. And then the following year in Jones v. Bach, the Supreme Court said to properly exhaust, the court must comply with the precise terms of the jail's grievance procedure, and they specifically say you don't look to the text of the PLRA. They say, quote, compliance with prison grievance procedures, therefore, is all that is required by the PLRA to properly exhaust. And I think that, combined with the fact that we have case law from the Supreme Court interpreting the doctrine of exhaustion in the administrative law context, saying that, again, you need to have an affirmative requirement as to what is necessary to exhaust in the underlying regulation, or here in the analogous case, the PLRA's, the jail's grievance procedures, does create that requirement for jails to say what you need to do or not do in order to exhaust administrative remedies. And defendant's approach, where any procedural step referenced in the grievance policy is mandatory, regardless of what the jail's own policy says, would effectively, would conflict with this court's decision in Williams v. Wexford, as well as 3rd and 11th Circuit precedent, all of which recognize that grievance procedures can include optional procedures, like an emergency grievance or a request for compensation, but that completion of those optional procedures is not required to properly exhaust administrative remedies under the PLRA if the jail doesn't say that they are required. It says it's required, I'm reading from the language, and just so you have it in front of you, docket 29-1, the language of the exhaustion, particularly the grievance, if you are dissatisfied with a result, you may appeal the decision. And so your argument, Ms. Noble, is that language says that an appeal is optional. That's correct, and I think that's required by this court's decision in Sigler, that says may, especially in a regulatory context, is a permissive term that doesn't command anyone to do anything. And I think the surrounding text only further confirms that, because the jail effectively inserted a sort of subjective inquiry of whether or not you feel dissatisfied into the consideration of whether or not to appeal. And I think if you put yourself in the position of the prisoner who's reading this policy, and you see an expressly optional provision to appeal, which notably is in contrast to the first step in the grievance procedure, which uses an imperative command that you do need to file a grievance in the kiosk. So there's contrasting mandatory and permissive language. And on top of that, it applies in circumstances that don't clearly apply to the prisoner who's reading the grievance. They wouldn't know that they need to appeal that grievance in order to properly exhaust administrative remedies under the PLRA. In other words, you're arguing that he was not required to take a next step in the jail's grievance procedure, and file an appeal from the initial denial of his grievance, is that right? That's correct. And I think that's mandated by the plain reading of the grievance procedure itself. And you are not otherwise arguing that he didn't understand he had a right to appeal the denial of his grievance? I do think the argument can be framed also under availability, if the court wanted to analysis within that framework. And that's because in the same way a remedy isn't available if it doesn't appear in the grievance procedure, it's also not available if it's described as optional in contrast to other mandatory steps. Because a reasonable prisoner reading the procedure wouldn't understand that optional appeal was required for purposes of PLRA exhaustion. So I think it's a question of framing and that the term exhausted and the availability limitation support the same rule. And that rule is that prisoners need only comply with the precise terms of the grievance procedure and they need not do anything more. Are you suggesting that he did not understand the process? I'm suggesting that first, it simply wasn't required by the text. So it wasn't necessary to properly exhaust. But second, in decisions like Williams v. Wexford, this court has kind argument but in the context of availability by saying that it effectively makes the procedure opaque when it says that this is permissive, this is something that is optional, while this is something that is mandatory. Because they don't know that that option is actually not optional and they do have to do it in order to exhaust their remedies. But even if this court concludes that Mr. Burns was required to appeal his grievance, the district court still erred in granting a summary judgment because he filed a sworn affidavit stating that he was unable to appeal the grievance, creating a genuine dispute of material fact as to whether that appeal process was available to him. His affidavit clearly states that he wasn't provided a proper way, that the grievance wasn't afforded to the right person and that no appeal was granted to him to pursue in the kiosk. And that too creates a genuine dispute of fact as to whether that appeal mechanism was ever available to him in the first place. Thank you, Ms. Noble. Would you like to save some time for rebuttal? I would. Thanks so much. All right. Ms. Bullitt, we'll hear from you. You may proceed. Good morning, Your Honors, and may it please the court. Abigail Bullitt and I represent the appellees in this matter. The question in front of this court is, did Mr. Burns properly exhaust all available administrative remedies? The answer is simple. No, he did not. Defendants have shown both that the jail's administrative policies, the grievance procedure was made to him, and second, that he didn't complete every step as required by the PLRA. Under the Prison Litigation Reform Act, no action shall be brought until such administrative remedies as are available are exhausted. The Supreme Court in Woodford further explained that proper exhaustion is required, and to properly exhaust, a prisoner must complete every step of the prison's grievance process. The only exception baked into the text of the PLRA is whether or not that is available. The Supreme Court most recently addressed this issue in 2016 after the cases that counsel referenced in her argument in Ross v. Blake. It has emphasized that prisoners must take advantage of all procedures that are actually available, and the text of the PLRA, in very strong language, the court says, suggests no limits on an inmate's to exhaust. So, in short, if it's available, he must use it. The court went on to describe in Ross v. Blake three separate categorical exceptions as to when something might be unavailable. Before we go down that road, let's look at the language that the grievance procedure outlines for Mr. Burns. Particularly, I'm just going to look at 29-1, that's the grievance I had in front of me, looking at step three. What is the language of the grievance procedure that Mr. Burns was supposed to follow in regards to appeal looking at this language? So, in step number three, if you are dissatisfied with the result, you may appeal the decision by writing supporting documentation, including full names and witnesses. The appealing jail representative will review and rule on your appeal. And so, automatically, once he receives that response, he has the eligibility and the option to appeal that response. And so, he could either submit it in writing or he could do it on the kiosk. Are there words missing in step three? I don't believe so, no. Okay. All right. And so, you're reading that language as mandatory? Correct. In the context within the PLRA, if it's an available step to Mr. Burns and he wants to proceed in filing suit in federal court, that's an in the process what's available to him. He completes the grievance. The grievance is reviewed. He receives the response. The next available step to him is that he may appeal if he's dissatisfied. So, to Your Honor's point, the jail isn't compelling anyone who doesn't want to take it to federal court to appeal. Here, what they're doing is saying, if you are so dissatisfied and you plan to take this to federal court, here's an available option in the spirit of the PLRA saying that they wanted prisoners and jails and prisons to work together to try to get the situation resolved at a lower level before coming to federal court. And so, that makes sense in the context here of what the PLRA's intent is. I am going to take you somewhere else for a moment. As I read Mr. Burns' affidavit, he says he was unable to appeal. Why should we not take his affidavit at face value? Your Honor, the single statement or claim that Mr. Burns makes that's in the record is found in his declaration, which says, plaintiff filed grievances with the captain and also was received by lieutenants. Plaintiff was responded to, but due to the grievance system in the jail, was not forwarded to the responsible or proper designee, and no appeal was granted to further pursue this grievance. In short, no reasonable jury could find in his favor when the grievances procedure clearly does not require Mr. Burns to have any permission to appeal. In the declaration that's submitted by the defendants, it says once that person receives their response, it is eligible. They have both the right and the authority to appeal at that point if they are dissatisfied. Well, you know, there's a pro se. He's clearly averred that he was unable to appeal. What exactly the problem was may be unclear, but the thrust of his affidavit is not. He says, I was not able to appeal. And he, in the brief, he makes the reasonable point that the defendants didn't offer any contrary evidence. In other words, that, in fact, he was able to appeal and just failed to do so. So I, you know, there's, if you take a look at, I think, John Dingman's, let me just think. There was a declaration, that was it, from John Dingman. Isn't, you know, isn't there room to infer that the first step decision on an inmate's grievance isn't final, but subject to an appeal until certain things happen? So that would leave room for a notion, the notion that any misstep in this process might have precluded him from appealing, even if it was his intent to do so. So why isn't his affidavit sufficient to establish a dispute of fact as to whether an appeal was available to him and return, you know, to the district court, have an evidentiary hearing on that issue, and, you know, whether or not it was available to him? Your Honor, our position is, is that the district court was correct in stating that a misunderstanding of the grievance process, which is what his claim statement is, is saying, I wasn't able to appeal. He doesn't just say that. He says, due to, it has to be assigned to the proper designee and then forwarded and then approved and granted permission. None of that is in our procedure. None of that has been required. He doesn't allege that that was required for his other appeals that he did. He doesn't say, hey, went to the kiosk. I tried. I asked for help. I couldn't find the button. Just more is simply needed in terms of creating a genuine dispute of material fact. And the district court relied on this. What more is needed? I'm sorry, Judge Kollar. Go ahead. What more would be needed? Some of the things that I just mentioned in terms of saying, I wasn't able to appeal. I tried on this date. The button wasn't there. I tried asking for help. I tried to appeal this, and no one helped me with it. Just something more than just saying, I was unable to appeal, and then to give a reason that isn't even correct or even part of the grievance process, because the grievance process is pretty clear. He's utilized it before. And in his brief, he explains some of his argument by pointing to something in our declaration that where there is a step of an approval process that leads to the response, where it says, hey, it does have to be It does has to be properly assigned to this person, and then they receive the response. And it seems to be, in hindsight, him taking some language from our response process and trying to then articulate why his appeal, why he didn't appeal, because it didn't get done. You know, every word of your argument, you'll forgive me. That sounds like a question of fact. A question of fact. So help me with that. I need help, as you can tell. Your Honor, I think the district court properly found that they relied on this court's opinion in Ramirez v. Young, which is clear. Ignorance does not excuse the exhaustion requirement. The court went on to cite Ramirez and stated that he was not saying he was ignorant in the scenario that I've given you. He's saying he was unable to. Your Honor, but the reason that he gives is not correct. It's saying, if he said, I couldn't appeal because I had to name this person in my appeal, that isn't part of the process. He didn't have to name anyone. And in the same way, when he says, I didn't have to appeal because it didn't get forwarded to the process, it's not a fact in the record. All he says is that I wasn't able to appeal due to it not being forwarded to the proper designee and not me being granted permission to appeal. No permission to appeal is needed. You have the right and the eligibility to do so, as it's shown in the declaration by the defendants in paragraph 27, I believe, where it says, the minute you receive a response, you have that ability and authority to appeal. Judge Kohler? Do you have any evidence in the record showing that he understood that and that the policies were followed in this instance and he would have been able to appeal and that he was specifically told that? Not that there was a video on loop or he could have gone to the kiosk, but that he had what he needed to appeal and that was specifically told to him? Your Honor, I think the evidence in the record showing that he has grieved over 47 times and then appealed four separate times shows that he knows how to do it. It was made available to him. So the argument that he was ignorant as to the process would not hold for this particular individual. Mr. Burns clearly knew. So if we accepted your premise, we would also have to that he understood the appeal process. So the declaration could not be this notion that I don't understand the process. Because his declaration does misstate the process, which is why it's confusing too, because he knows how to appeal. However, the reason he used as to why he doesn't appeal is a reason that doesn't make any sense. It's restating the process that's not correct and not in line with the jail's grievance procedure, which in the record shows that he has to acknowledge every time he logs into the kiosk. So he knows how to do it. It's available to him. But isn't that an inference? Couldn't the inference also be that the jail didn't make it available in this instance? I think an inference would have to be based on a fact in the record and him just simply stating that it wasn't forwarded to the proper official and he wasn't granted permission to appeal without more is not enough to create a genuine dispute of fact here. Thank you, counsel. Yeah, thank you, your honor. Ms. Noble will give you two minutes on rebuttal. On the first question. Give us one second. She's gathering within one second. You may proceed. Go ahead. On the first question of whether Mr. Burns was required to appeal, my colleague states that the only exception to the obligation to exhaust is the availability of the remedy. But Mr. Burns' argument is about what it means to exhaust, which is a term of art, again, borrowed from the administrative law context. And to the extent we care about the intent of the PLRA. It might be a better use of your time to focus simply on the declaration. Sure, your honor. On that issue, I think the dispute is that the affidavit is not to be read or the district court interpreted the affidavit as a statement that he misunderstood the procedural process. But it could equally be read as that he was physically unable to appeal the grievance. And I think you need to read the statement in the affidavit in the context of both his briefing, which further explains that he wasn't authorized or given a way to appeal his grievance, but also the Dingman declaration that had already been filed with the court and which explained in paragraphs 20 to 26, that the electronic kiosk was the way in which detainees accessed the grievance procedures and that they appealed through the grievance. So I think with that context, it's clear that his affidavit is a statement about what he was able to do through the electronic kiosk system. And further, the fact that there's only thing in the evidence is about what the procedure is, but Mr. Burns is creating a dispute of fact as to whether or not there was some in the background approval process required to make the appeal optional. Indeed, the Dingman declaration talks about how there is this backdoor approval process that's required before the response is made available to a detainee on the kiosk. And Mr. Burns' statement, which needs to be taken as true at this point on a motion for summary judgment, is that there was also an approval process required to make that appeal option available and it never was. And for that reason, the court should at very least remand on the grounds that there's a genuine dispute of material fact. Thank you, counsel. The court will take case number one under advisement.